## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Stephen McGrath, Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), herein after referred to as Affiant, being duly sworn, do hereby depose and state as follows:

### AFFIANT'S BACKGROUND AND QUALIFICATIONS

1. Affiant is a duly sworn Special Agent of the ATF. As such, Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 26 of the United States Code that is, a special agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. Affiant has been involved and/or the lead investigator in numerous investigations of individuals and/or organizations involved in the illegal possession and/or sales of firearms as well as narcotics in violation of federal firearms laws. Affiant has conducted and participated in numerous undercover operations, surveillance operations, overt and covert operations, and has become familiar with the methods used by individuals engaged in the illegal possession, sales, and transfer of firearms and ammunition as well as narcotics. Affiant has been the lead investigator and has participated in many criminal investigations involving violations of Ohio drug and firearm laws. Affiant has executed numerous search warrants and arrest warrants related to illegal firearm and/or narcotics investigations.

3. Affiant's knowledge of the facts alleged in this affidavit are based on conversations with other law enforcement officers, including ATF Special Agents and support personnel as well as members of the Cleveland Division of Police; information received from law enforcement databases; and from Affiant's personal observation and participation in the investigation.

4. This Affidavit is offered in support of a Criminal Complaint against Defendant Rodrigus CALDWELL for the following offenses: Felon in Possession of Firearm, in violation of 18

1

USC 922 § (g)(1), Trafficking in Firearms, in violation of 18 USC § 933(a), and Possession of a Machinegun, in violation of 18 USC § 922(o).

## PROBABLE CAUSE

5. Your affiant avers that the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and other law enforcement officials are investigating Rodrigus CALDWELL. CALDWELL is a convicted felon suspected of trafficking firearms, possessing stolen firearms, and having illegally possessed a machinegun in the Northern District of Ohio.

6. Your affiant avers that during January and February of 2024, the ATF Cleveland Crime Gun Enforcement Team (CGET) conducted (4) undercover controlled purchases of firearms from Rodrigus CALDWELL in Cleveland, Ohio.

7. All transactions and communications were audio and/or video recorded. All telephonic communications, both calls and texts, were recorded for evidentiary use. All telephonic conversations and messages exchanged between undercover personnel and Rodrigus CALDWELL occurred with CALDWELL's telephone number of 216-533-8604. Each undercover transaction was conducted with the use of pre-recorded buy money in the form of U.S. currency (herein after referred to as "Buy Money").

8. Your affiant avers that in January of 2024, a Cleveland Division of Police (hereinafter "CDP") detective acting in an undercover capacity (hereinafter "UC1") was introduced to Rodrigus CALDWELL. The CDP detective was provided a telephone number for a "Rodrigus" who could supply firearms. The telephone number provided was 216-XXX-8604. The CDP detective queried this number through the CDP report management system and found this number associated with a "Rodrigus CALDWELL" who was named in a domestic violence report from December of 2023 in the area of 50 Public Square, Cleveland, Ohio. Furthermore, the UC1 reviewed Ohio Bureau of Motor Vehicle (BMV) Identification Card photos of CALDWELL.

2

9. Your affiant avers that a Computerized Criminal History (CCH) query for CADLWELL provides that he has a prior conviction for Robbery; Ohio Revised Code 2911.02(A)(3) which is a third-degree felony. CALDWELL pled guilty to this charge on March 28, 2023 and was sentenced on July 10, 2023 to one and half years of community control in the Court of Common Pleas, Cuyahoga County, Ohio; Case number CR-22-670013A.

10. Your affiant avers that on January 22, 2024, UC1 met with CALDWELL in person in Cleveland, Ohio and was able to confirm that the person UC1 was meeting with was in fact that same person UC1 viewed in the BMV photographs thus positively identifying Rodrigus CALDWELL. During this meeting, CALDWELL coordinated the sale of a Glock pistol equipped with a machinegun conversion device (also known as a "Glock switch") for $1,200.00 in Buy Money. During this transaction, UC1 met with CALDWELL who then directed UC1 to a location in Cleveland, Ohio where he was going to meet with a firearm source of supply (who is a person known but not herein mentioned and hereinafter referred to a "SOS"). CALDWELL and UC1 were travelling in a motor vehicle and CALDWELL provided turn-by-turn directions to the location where they were to meet with the SOS. CALDWELL directed UC1 to a parking lot in Cleveland, Ohio where the SOS was waiting on their arrival. CALDWELL then met with the SOS and began to facilitate the exchange of the firearm. UC1 observed CALDWELL take possession of a Glock pistol from the SOS. CALDWELL then sold UC1 a Glock, model 30, 45 caliber pistol equipped with a machine gun conversion device in exchange for the Buy Money. CALDWELL then paid the SOS and departed from the transaction location with UC1. Upon leaving the area, CALDWELL explained to UC1 how the machinegun conversion device functioned.

11. Your affiant queried the above-mentioned Glock, model 30, 45 caliber pistol through the National Crime Information Center (herein after NCIC) and found it to have been reported stolen on August 7, 2021 to the CDP in Cleveland, Ohio.

3

12. Your affiant avers that CALDWELL and the UC1 communicated via recorded cellular telephone and text message after their first meeting. They coordinated a second meeting in which CALDWELL had additional firearms he could source. CALDWELL texted the UC1 a photograph advertising a Glock pistol displaying serial number BWZL487 on the slide for sale. The slide of the pistol appeared to be brown or tan in color while the frame of the pistol appeared to be black in the photo. CALDWELL and UC1 agreed to meet at a predetermined location in Cleveland, Ohio to conduct a transaction for two additional firearms.

13. Your affiant avers that on January 25, 2024, CALDWELL met with UC1 and an undercover ATF Special Agent (UC2) at a predetermined location in Cleveland, Ohio. CALDWELL discussed pricing with UC1 and UC2 inside of a vehicle for several moments. CALDWELL was then observed by UC1, UC2, and surveillance units meet with the SOS (this is the same firearms source of supply from the January 22, 2024 transaction). CALDWELL then returned to UC1 and UC2 and sold UC1 a Glock, 19X, 9mm semiautomatic pistol with a brown or tan colored slide and a black frame. The serial number of the frame was BRXT846 while the serial number on the slide was BWZL487. This Glock firearm was the same as the firearm CALDWELL had sent in the photograph via text message. UC1 purchased this firearm for $900.00 in Buy Money. CALDWELL then walked away from UC1 and UC2 and was observed by UC1, UC2, and surveillance units meeting with a different firearm source of supply. CALDWELL then returned to UC1 and UC2 and sold UC1 and UC2 a purple SCCY Industries, model CPX-2, 9mm semi-automatic pistol for $500.00 in exchange for Buy Money. To complete the transaction, UC1 and UC2 then paid CALDWELL a brokerage fee in Buy Money for coordinating the firearms transactions.

14. Your affiant avers that CALDWELL and UC1 continued to communicate via recorded cellular telephone calls and text messages after January 25, 2024. CALDWELL sent UC1 more photographs advertising firearms he could sell. One specific firearm that CALDWELL sent to UC1

4

was a black Smith & Wesson, M&P 40, 40 caliber pistol equipped with an aftermarket pistol mounted light and rubber grip with an extended magazine. CALDWELL and UC1 agreed to meet at a predetermined location and CALDWELL agreed to sell two firearms to UC1. During these communications UC1 expressed to CALDWELL that UC1 sells the firearms to another male who transports the firearms to Detroit.

15. Your affiant avers on January 30, 2024, UC1 accompanied by an undercover Special Agent (herein after UC3) met with CALDWELL at a predetermined location in Cleveland, Ohio. Upon the UCD arriving at the predetermined location, UC1 called CALDWELL to let him know UC1 had arrived. CALDWELL stated that he was ten minutes away. UC1 then confirmed via conversation over the telephone that none of CALDWELL's associates "had their names" on the any of the firearms that UC1 had purchased previously or was going to purchase. CALDWELL confirmed that the only one that may be able to be traced to the owner was the purple colored SCCY Industries, model CPX-2, 9mm pistol of which he sold to UC1 on January 25, 2024. CALDWELL informed UC1 that "she was going to report it stolen". UC1 then further explained to CALDWELL that he wanted to ensure the firearms could not be traced to anyone because UC1 was transporting the firearms to Detroit, Michigan and selling them to gang members who are using the firearms to "do work" (street vernacular for committing violent crimes and/or other criminal acts often felonious in nature). This conversation ended with CALDWELL telling UC1 that he would meet UC1 at the predetermined location in seven minutes. This predetermined location was the same location as the previous transaction for firearms on January 25, 2024. Several minutes later, CALDWELL arrived at the predetermined location and entered the front seat of the vehicle occupied by UC1 and UC2. After exchanging greetings, CALDWELL stated, "Just give me six". As UC1 handed CALDWELL the Buy Money, CALDWELL could be heard on the phone with a male stating, "Waiting on you bro". While waiting on the firearms source of supply to arrive, UC1 mentioned the purple SCCY Ind.,

model CPX-2, 9mm pistol purchased from CALDWELL on January 25, 2024. CALDWELL again stated, "She about to report it stolen so y'all good". UC1 told CALDWELL that he could file down or scratch off the serial number to prevent traceability to the purchaser and CALDWELL replied, "Yea you could do that too." CALDWELL then exited the vehicle, conducted a hand-to-hand transaction with the SOS and then returned to the vehicle occupied by the UC1 and UC3. CALDWELL then produced a Smith and Wesson, model SD40, 40 caliber semi-automatic pistol. UC1 inquired about the second firearm that was agreed upon as part of this transaction. CALDWEL stated, "I got the other one on me. Give me the money. I been had the other one on me." UC1 and UC1 handed CALDWELL $800.00 in Buy Money, at which time CALDWELL produced a Smith and Wesson, model M&P40, 40 caliber semi-automatic pistol accompanied by an extended magazine from the front pocket of his hooded sweatshirt. This firearm matched description of the firearm in the photograph CALDWELL had texted to UC1 to include the same make, model, color, aftermarket light and rubber grip. CALDWELL was paid a brokerage fee in Buy Money to complete this transaction.

16. Your affiant queried both of the above mentioned purchased firearms in the National Crime Information Center and found the Smith & Wesson, model SD40, was reported stolen on June 09, 2019 to CDP in Cleveland, Ohio.

17. Your affiant avers that between January 30 and February 2, 2024, UC1 and CALDWELL communicated via recorded telephone calls and text messages with the same telephone number used for previous meetings and firearms transactions. CALDWELL again had sent UC1 several photographs of firearms advertising them for sale; in particular, CALDWELL sent UC1 photographs of Glock pistols, one of which equipped with machinegun conversion device (also known as "Glock switches"). UC1 agreed to purchase two Glock pistols equipped with machinegun conversion devices for $2,600.00. They agreed to conduct the transaction on February 2, 2024 at the

same location as the two previous transactions.

18. Your affiant avers that on February 2, 2024, UC1, accompanied by UC2, met with CALDWELL at a predetermined meet location where they then travelled together to a predetermined transaction location; both locations being in Cleveland, Ohio. They exchanged greetings and briefly discussed pricing. Upon arriving at the predetermined transaction location, CALDWELL began communicating via cellular telephone with the suspected SOS. UC2 asked CALDWELL, "Are these dudes here?" to which CALDWELL replied, "They about to walk up right now". CALDWELL then added, "We just gonna do it like we did last time bro, you feel me? In and out". CALDWELL began talking about the previous firearms transaction between UC1 and CALDWELL which occurred on January 30, 2024. CALDWELL was discussing with the UC1 and UC2 the functionality of binary triggers and fully automatic firearms. CALDWELL stated to UC1 and UC2 that a firearm equipped with a binary trigger is the same as a firearm equipped with a "switch" (otherwise known as machinegun conversion device) and that the price should be the same. UC2 stated to CALDWELL, "Well we don't get rid of them here" and CALDWELL replied, "That's what I'm saying y'all getting rid of them in Detroit"; referencing UC1 and CALDWELL's prior conversation regarding UC1 one's cover story that he transports the firearms to Detroit after he purchases them from CALDWELL and sells them to gang members who use the firearms "to do work" (street vernacular for committing violent crimes and/or other criminal acts often felonious in nature). After a few minutes of conversation, CALDWELL stated that he needed to bring at least $1,600.00 to the SOS to exchange for the firearms. CALDWELL was provided $1,600.00 in Buy Money and then CALDWELL exited the vehicle occupied by the UC1 and UC2. UC1, UC2, and surveillance units observed CALDWELL conduct a hand-to-hand transaction with the SOS. CALDWELL then returned to the vehicle occupied by the UC1 and UC2. CALDWELL produced a Glock, model 19, 9mm pistol and a Glock, 19Gen5, 9mm pistol from inside of his jacket and handed them to the UC's in exchange for the additional Buy

7

Money. Both firearms were loaded with ammunition when handed to UC1 and UC2. CALDWELL was paid a brokerage fee in Buy Money to complete this transaction.

19. Your affiant queried both of the firearms purchased on February 2, 2024 through NCIC and found that the purchased Glock, 19Gen5, 9mm pistol was reported stolen on July 10, 2022 to CDP in Cleveland, Ohio.

20. Your affiant avers from February 2, 2024 until the day this affidavit was signed, February 12, 2024, UC1 and CALDWELL have been communicating via recorded telephone calls and text messages. CALDWELL, using the same number that he has arranged three prior firearms transactions with UC1, has advertised to UC1 additional firearms and a large quantity of "blues" (street vernacular for blue pills which are commonly counterfeit oxycodone and contain of Fentanyl) for sale. UC1 and CALDWELL have discussed pricing for both. Due to the active communications between UC1 and CALDWELL, your affiant believes that CALDWELL is still engaged in criminal activity.

21. Your affiant is an ATF Special Agent that attended the ATF Firearms Interstate Nexus Training in 2021 and has been certified by the ATF to make interstate nexus determinations. Your affiant has viewed and inspected the seven firearms purchased from CALDWELL and based upon your affiants training, experience, research, and knowledge that all seven firearms purchased from CALDWELL were not manufactured in the State of Ohio and therefore travelled in interstate commerce.

### Conclusion

22. Based on the foregoing, your Affiant believes and asserts that there is probable cause to believe that beginning on or about January 22 through on or about February 2, 2024, Rodrigus CALDWELL did, knowingly possess and transfer a machinegun as defined in Title 26 U.S.C. § 5845(b), in violation of 18 U.S.C. § 922(o); knowingly possess firearms and/or ammunition affecting

8

interstate commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1); transfer firearms to another person in or otherwise affecting interstate or foreign commerce knowing or having reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony as defined in 18 U.S.C. § 932(a), in violation of 18 U.S.C. § 933(a).

23. Based on the foregoing, I submit there is probable cause to issue the requested criminal complaint and arrest warrant against Rodrigus CALDWELL.

STEPHEN MCGRATH
SPECIAL AGENT, ATF

Sworn to via telephone after submission by reliable electronic means.
Fed. R. Crim. P. 3, 4(d), and 4.1. on 2/12/2024 at 3:00 p.m.

JENNIFER DOWDELL ARMSTRONG
UNITED STATES MAGISTRATE JUDGE